# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON MICHAEL BRISTOL, | Case No. 1:15-cv-00846-SAB-HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO CLOSE CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| CHRISTIAN HAMATI, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 5, 13).

**I.**

**BACKGROUND**

In 2011, Petitioner was convicted after a jury trial in the Kern County Superior Court of attempting to commit a lewd or lascivious act upon M.H., a child under the age of fourteen (count 1), and annoying or molesting C.A., a child under the age of eighteen (count 2). Petitioner was acquitted of annoying or molesting A.A., a child under the age of eighteen (count 3). People v. Bristol, No. F064363, 2014 WL 173162, at *1 (Cal. Ct. App. Jan. 16, 2014). On January 31, 2012, Petitioner was sentenced to an imprisonment term of five years. (2 CT[1] 386).

---
[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on January 12, 2016. (ECF No. 20).

On January 16, 2014, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. Bristol, 2014 WL 173162, at *6. Thereafter, Petitioner filed a petition for review in the California Supreme Court, which denied the petition on April 9, 2014. (LDs[2] 5, 6). Petitioner did not file any state habeas petitions. (ECF No. 1 at 3).[3]

On May 29, 2015, Petitioner filed the instant federal petition for writ of habeas corpus in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1). On June 4, 2015, the matter was transferred to the Fresno Division. (ECF No. 3). On November 30, 2015, Respondent filed an answer. (ECF No. 19).

## II.

## STATEMENT OF FACTS[4]

I. *Prosecution Evidence*

Around 7:00 p.m. on September 5, 2011, defendant visited the Bakersfield home of his neighbor Carmen P. and socialized with her father Ruben P. in the garage. When Carmen came into the garage, defendant hugged her. She smelled alcohol on his person. Meanwhile, Carmen's four-year-old son A.A. and three-year-old daughter C.A. were playing in the front yard with other children, including nine-year-old neighbor M.H. After Carmen checked on them, she went inside her house. From her bedroom window, she watched the children and defendant enter the backyard. At some point, defendant unzipped his pants. He grabbed M.H.'s wrist and pulled her hand toward his crotch. M.H. freed herself and ran out of the backyard. Defendant stayed, played with C.A. for about five minutes, and then lied down on the grass. He pulled down his shorts and underwear, masturbated with his right hand, and tried to grab C.A. with his left hand. Carmen, who witnessed the incident, hurried to the backyard. She screamed at defendant, who stood up, pulled up his shorts, and fled. After Carmen brought the children inside the house, she ran to the front yard, observed defendant "fast walking" home, and called the police.

Defendant returned to his house and asked his mother Peggy Langels for his car keys. Langels refused to help, stating that he had been "drinking all day." Defendant eventually found the keys in his bedroom and drove away in a white truck. Officer Joseph Calvillo of the Bakersfield Police Department was dispatched to the scene. After he interviewed Carmen, M.H., and Langels, he and his partner John Blunt searched the vicinity for defendant's vehicle to no avail. Defendant came back the following morning. He was arrested after Langels called the police.

---

[2] "LD" refers to the documents lodged by Respondent on January 12, 2016. (ECF No. 20).
[3] Page numbers refer to ECF page numbers stamped at the top of the page.
[4] The Court relies on the California Court of Appeal's opinion, issued on January 16, 2014, for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

The prosecutor filed a motion in limine to admit evidence of defendant's prior sexual offense, including three images of child pornography found under the backseat of his vehicle during a lawful search on June 9, 2005. The trial court admitted one of the photographs into evidence and allowed brief descriptions of the other two. On direct examination, Deputy Michael Boyd of the Kern County Sheriff's Office, who conducted the search, described the first excluded image:

> "A. Two young girls I would estimate eight or nine years old, totally unclothed, on a bed, simulating a sex act. One girl's on her hands and knees. And the other girl is behind her, on her knees.
>
> "Q. And is the girl that's behind her on her knees, would that be commonly referred to as doggie style?
>
> "A. Yes.
>
> "Q. And is she touching the other girl that's on the bed?
>
> "A. She's got both of her hands placed on the other girl's buttocks."

Next, he described the second excluded image:

> "A. There's two young girls also about eight or nine years old. They do have their clothes on. One girl is standing. She is holding what looks like two tomatoes down to her crotch area. There's another girl about the same age, eight or nine, with clothes on, that is kneeling next to her, holding what looks like a cucumber between the two tomatoes in front of the girl, near her crotch area.
>
> "Q. And is the girl that is kneeling in her crotch area doing anything with her mouth?
>
> "A. Yes. She's got her mouth open near the cucumber.
>
> "Q. Is it simulating a blow job, or oral copulation?
>
> "A. Yes. That is what I perceive it to be.
>
> "Q. And the clothes, are they shorts, short shorts, and a tank top?
>
> "A. That's what the girl's wearing. The one on the ground or kneeling has some thin straps on the shirt and has some black shorts with what looks like a leopard print on it."

Sergeant Doug Wilson of the Kern County Sheriff's Office, who was also involved in the investigation of defendant's prior offense, echoed Boyd's testimony:

> "[The first] photo shows two young girls I believe on a bed. One is on her knees, bent over—both girls are naked, on her knees, bent over, with their hands on the bed, looking back like as towards the camera. And with another young girl apparently the same age, close to the same age, behind her, naked, on her—I believe on her knees also on the bed, with her hands on the kneeling girl's

> buttocks. [¶] . . . [¶] . . . [The second] photo contains two girls of approximately the same age. Both of them are clothed, I believe, in shorts and tops. One is standing on a chair, holding two tomatoes in front of her crotch area. The other girl is kneeled on a chair just in front of her, holding what appears to be a cucumber between the tomatoes and with her face close to the cucumber, with her mouth open."

Boyd and Wilson further testified that all three images were tattered and mended with Scotch Tape.

II. *Defense Evidence*

Defendant testified that he began to drink alcohol in excess when he was enlisted in the Army more than 20 years ago. He consumed "about a 12–pack a night." On many occasions, defendant experienced alcohol-induced blackouts and thereafter could not recount where he was or what he did.

On September 5, 2011, defendant drove his girlfriend to Los Angeles International Airport. On the return trip to Bakersfield, he drank six beers and purchased another "36 pack." Defendant subsequently visited Ruben. He recalled "playing ... stick ball in the front yard with the kids" and then "[w]aking up with Carmen screaming her bloody lungs out at [him], calling [him] a perverted bastard, what are you doing." Defendant could not remember "anything from the backyard," "what the hell [he was] doing [t]here," "what the hell [he was] doing," or "how [he] got home."

Prior to September 5, 2011, M.H., C.A., A.A., and other children in the neighborhood frequently went to defendant's house to play with him and his dog. Although he physically interacted with these children "[p]robably a thousand times," he did not touch them with sexual intent. Defendant denied that he was a child molester or sexually attracted to children.

Regarding his prior offense, defendant stated that he came across the images of child pornography while he was browsing an adult pornography website. He printed these "bizarre" photographs, placed them in a folder, and "threw them under the back seat" of his truck "for over a year" because he did not want anyone to find them in his house and think that "[he] was sick." Defendant "didn't look at [the images] again" and later forgot that they were in his truck.

Bristol, 2014 WL 173162, at *1–3 (alterations in original) (footnotes omitted).

## III.

## DISCUSSION

**A.  Standard of Review**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as

4

guaranteed by the United States Constitution. The challenged convictions arise out of Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

1  Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an
2  end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552
3  U.S. at 126; Moses, 555 F.3d at 760.

4  If the Court determines there is governing clearly established Federal law, the Court must
5  then consider whether the state court's decision was "contrary to, or involved an unreasonable
6  application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C.
7  § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the
8  state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question
9  of law or if the state court decides a case differently than [the] Court has on a set of materially
10 indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The
11 word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character
12 or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New
13 International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to
14 [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the
15 governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to"
16 clearly established Supreme Court precedent, the state decision is reviewed under the pre-
17 AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

18 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if
19 the state court identifies the correct governing legal principle from [the] Court's decisions but
20 unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.
21 "[A] federal court may not issue the writ simply because the court concludes in its independent
22 judgment that the relevant state court decision applied clearly established federal law erroneously
23 or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,
24 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists
25 could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."
26 Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the
27 correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If
28 the Court determines that the state court decision is objectively unreasonable, and the error is not

structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

### B. Due Process Claim

In his only claim for relief, Petitioner asserts that the admission of evidence of his prior sexual offense pursuant to California Evidence Code section 1108 violated his right to due

7

1 process. (ECF No. 1 at 5). In the answer, Respondent argues that the state court's rejection of
2 Petitioner's due process claim was neither contrary to nor an unreasonable application of clearly
3 established federal law. (ECF No. 19 at 14).

4 This claim was presented on direct appeal to the California Court of Appeal, Fifth
5 Appellate District, which denied the claim in a reasoned decision. The claim also was raised in
6 the petition for review, which the California Supreme Court summarily denied. The Court
7 presumes that the California Supreme court adjudicated the claim on the merits. See Richter, 562
8 U.S. at 99. As federal courts review the last reasoned state court opinion, the Court will "look
9 through" the California Supreme Court's summary denial and examine the decision of the
10 California Court of Appeal. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v.
11 Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst, 501 U.S. at 806.

12 In finding that evidence of Petitioner's prior sexual offense was admissible because the
13 probative value outweighed prejudicial effect, the California Court of Appeal stated:

> Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid.Code, § 1101, subd. (a).) However, in a criminal action in which a defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by section 1101, so long as the evidence is not made inadmissible by section 352. (§ 1108, subd. (a).) The California State Legislature enacted section 1108 to "relax the evidentiary restraints" imposed by section 1101, "expand the admissibility of disposition or propensity evidence in sex offense cases," and "assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta* ).)
>
> "By removing the restriction on character evidence in section 1101, section 1108 now 'permit[s] the jury in sex offense ... cases to consider evidence of prior offenses *for any relevant purpose* ' [citation], subject only to the prejudicial effect versus probative value weighing process required by section 352." (*People v. Britt* (2002) 104 Cal.App.4th 500, 505, original italics; accord *People v. Robertson* (2012) 208 Cal.App.4th 965, 990 (*Robertson* ).) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Factors to weigh include the "nature, relevance, and possible remoteness [of the uncharged sex offense], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its

outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at p. 917.) Evidence should be excluded as unduly prejudicial " ' "when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' " (*People v. Scott* (2011) 52 Cal.4th 452, 491; see also *People v. Gionis* (1995) 9 Cal.4th 1196, 1214 ["prejudice" set forth in § 352 does not refer to prejudice or damage to a defense that naturally flows from relevant, highly probative evidence, but applies to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues].)

We review a trial court's evidentiary ruling under sections 1108 and 352 for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law. (*Robertson, supra,* 208 Cal.App.4th at p. 991.)

We conclude the trial court did not abuse its discretion when it admitted evidence of defendant's prior sexual offense because the probative value outweighed prejudicial effect. In the instant case, defendant was charged with one count of attempting to commit a lewd or lascivious act upon a child under the age of 14 and two counts of annoying or molesting a child under the age of 18. He claimed that he did not have the intent to arouse, appeal to, or gratify his lust, passions, or sexual desires (see *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1290 ["[Penal Code] section 288 is a specific intent crime."]; see also *People v. Montes* (2003) 112 Cal.App.4th 1543, 1549 [an attempt to commit a crime requires a specific intent to commit the particular offense] ) or to direct annoying or molesting conduct toward a child (see *People v. Phillips* (2010) 188 Cal.App.4th 1383, 1394 ["The intent to be observed while engaging in the offensive conduct [proscribed by Penal Code section 647.6, subdivision (a) ] is subsumed in the element that the offender 'directs' his conduct toward a child."]; see also *People v. Shaw* (2009) 177 Cal.App.4th 92, 103–104 [" 'Although no specific intent is prescribed as an element of [Penal Code section 647.6], a reading of the section ... indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to a child.' "] ). Evidence of defendant's previous possession of child pornography was relevant to prove intent as well as impugn credibility. The three images each consisted of underage girls, either clothed or unclothed, in provocative poses. Defendant conceded that he found these photographs online, printed them, stored them in a folder, and hid them in his truck for over a one-year period. Although he asserted that he simply forgot about their existence, their mended condition may suggest otherwise. The jurors could reasonably find defendant to have had an unnatural and abnormal sexual proclivity toward underage girls and, in turn, infer that he had the requisite mental state for each charged offense. (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 440 ["Because intent for purposes of Penal Code section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances."]; *People v. Moore* (1955) 137 Cal.App.2d 197, 204 [intent to annoy or molest a child may be reasonably inferred from the overt act].)

We point out that the trial court engaged in section 352's weighing process, admitted only one of the three images into evidence, and allowed prosecution witnesses to briefly describe the other two. It also issued a comprehensive jury instruction detailing the correct use of this evidence. (*Ante,* fn. 4.) These measures

9

> reduced the likelihood of inflaming emotional bias, ensured that the jury would not expend an inordinate amount of time "trying the uncharged offense[ ] so [as to] dwarf[ ] the trial on the current charge[s]," and offset the risk that the "jury might punish the defendant for his uncharged crime[ ] regardless of whether it considered him guilty of the charged offense[s]...." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42.) That the jurors convicted defendant of counts 1 and 2 and acquitted him of count 3 affirmatively demonstrated that they carefully examined all the evidence and reached a sensible verdict. Had they been inflamed, "[they] would have convicted [him] of all charges." (*Robertson, supra,* 208 Cal.App.4th at p. 994.)
>
> We reject defendant's contention that evidence of his prior sexual offense cannot be used to prove intent because the prior offense was not the same as the charged offenses. We previously held:
>
>> "Section 1108 does not require ' "more exacting requirements of similarity between the charged offense and the defendant's other offenses...." ' [Citation.] Such a requirement was not added to the statute because 'doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, ... and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative.' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 984; see also *People v. Frazier, supra,* 89 Cal.App.4th at p. 41 ["It is enough the charged and uncharged offenses are sex offenses...."].)
>
> Finally, we do not find the six-year gap between the commissions of the charged and uncharged offenses so unduly prejudicial as to justify exclusion. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 739, citing *People v. Burns* (1987) 189 Cal.App.3d 734, 737–739 [20–year–old conviction meets reasonable threshold test of remoteness]; see also *People v. Soto, supra,* at p. 991 ["[T]he passage of a substantial length of time does not automatically render the prior incidents prejudicial."].)

Bristol, 2014 WL 173162, at *3–5.

Admission of evidence is an issue of state law, and errors of state law do not warrant federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The pertinent question on habeas review is whether the state proceedings satisfied due process and "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir.1995)).

This Court is bound by the Ninth Circuit's decision in Holley v. Yarborough. Although circuit caselaw is not governing law under AEDPA, the Court must follow Ninth Circuit

precedent that has determined what federal law is clearly established. Byrd v. Lewis, 566 F.3d 855, 860 n.5 (9th Cir. 2009). Further, Ninth Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005) (en banc).The petitioner in Holley was charged with multiple felony counts of lewd and lascivious acts on a child under fourteen and challenged the trial court's admission of a lewd matchbook and several sexually explicit magazines seized from the petitioner's bedroom. 568 F.3d at 1096. The Ninth Circuit denied habeas relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ [of habeas corpus]." Id. at 1101. "Absent such 'clearly established Federal law,'" the Holley court could not "conclude that the state court's ruling was an 'unreasonable application.'" Id. (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006)).

The facts of the instant case are indistinguishable from Holley and do not warrant a different result.  Because there is no Supreme Court holding that establishes the fundamental unfairness of admitting prejudicial evidence, the California Court of Appeal's decision is not contrary to, or an unreasonable application of, clearly established federal law. The Court must defer to the state court's decision. Accordingly, Petitioner is not entitled to habeas relief on his due process claim and it must be denied.

**C.  Certificate of Appealability**

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. See Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issue presented is deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

///

///

///

///

12

## IV.
## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is DIRECTED to CLOSE the case; and
3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **May 20, 2016**

UNITED STATES MAGISTRATE JUDGE